```
                  UNITED STATES DISTRICT COURT
                  NORTHERN DISTRICT OF GEORGIA
                         ATLANTA DIVISION
```

LSSI DATA CORP.,

      Plaintiff,           CIVIL ACTION

    v.                      NO. 1:11-CV-1246-CAP

COMCAST PHONE, LLC,

      Defendant.

**O R D E R**

This matter is before the court on the plaintiff's motion for a temporary restraining order [Doc. No. 2].

**I.  Factual Background**

LSSi is a certificated local exchange carrier and a provider of directory assistance services, call completion services, data aggregation services, and other services to telecommunications carriers and others throughout the United States [Doc. No. 1, page 2]. Comcast is a local exchange carrier as defined in the Communications Act of 1934, as amended, 47 U.S.C. § 153 [Id., page 3]. Comcast has been providing nationwide directory assistance listing data to LSSi on behalf of itself and all of its affiliates and subsidiaries who are local exchange carriers pursuant to the parties' Directory Assistance Listing Agreement dated May 15, 2007 [Id., page 6].

On April 14, 2011, counsel for Comcast sent LSSi a letter purporting to terminate the Listing Agreement effective May 15,

2011 [Id., page 7]. In addition to seeking to terminate the Listing Agreement, Comcast also informed LSSi that it would cease providing directory assistance listing data directly to LSSi as of May 15, 2011 [Id.]. Comcast has stated that it will continue to provide directory assistance listing data to LSSi's competitor, Targus Info Corporation, and that if LSSi wishes to receive Comcast's directory assistance listing data after May 15, 2011, then LSSi will have to enter into an agreement with Targus to purchase that data from Targus [Doc. No. 1, page 7].

Comcast has refused to disclose to LSSi the terms of its arrangement with Targus, and Comcast has refused to provide directory assistance listing data to LSSi on terms or conditions as favorable as those given by Comcast to Targus [Doc. No. 1, page 8]. Comcast has also refused to disclose to LSSi the terms of its arrangements with other recipients of Comcast's directory assistance listing data [Id.].

## II. Legal Analysis

LSSi, pursuant to Federal Rule of Civil Procedure 65, has moved this court for a temporary restraining order preventing Comcast from refusing to honor and to perform Comcast's obligations to LSSi pursuant to 47 U.S.C. §§ 202, 222(e), and 251(b)(3), which it contends require, inter alia, that Comcast provide directly to LSSi all of Comcast's directory assistance listing data on a

complete, accurate, timely, and nondiscriminatory basis. Since the court has given Comcast notice, has heard argument from Comcast, and has received briefs in opposition to LSSi's motion for temporary restraining order, the court will construe the motion for temporary restraining order [Doc. No. 2] as a motion for preliminary injunction. To obtain such relief, the plaintiff must demonstrate: "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered unless the injunction is issued; (3) the threatened injury to the moving party outweighs whatever damage the proposed injunction might cause the non-moving party; and (4) if issued, the injunction would not be adverse to the public interest." BellSouth Telecommunications, Inc. v. MCIMetro Access Transmission Services, 425 F.3d 964, 968 (11th Cir. 2005).

### A.   Likelihood of Success on the Merits

The first factor that the court must consider is whether the plaintiff demonstrated a substantial likelihood of success on the merits. BellSouth, 425 F.3d at 968.

LSSi cites three statutory bases for its entitlement to receive the data at issue in this case directly from Comcast. First, LSSi contends that Comcast, as a local exchange carrier, is subject to the provisions of 47 U.S.C. § 251(b)(3), which states that Comcast has a "duty to provide dialing parity to competing

providers of telephone exchange service and telephone toll service, and the duty to permit all such providers to have nondiscriminatory access to telephone numbers, operator services, directory assistance, and directory listing, with no unreasonable dialing delays."  Second, LSSi contends that Comcast is subject to the provisions of 47 U.S.C. § 222(e), which requires that "a telecommunications carrier that provides telephone exchange service shall provide subscriber list information gathered in its capacity as a provider of such service on a timely and unbundled basis, under nondiscriminatory and reasonable rates, terms, and conditions, to any person upon request for the purpose of publishing directories in any format."  Third, LSSi contends that Comcast, as a common carrier, is prohibited under 47 U.S.C. § 202 from making "any unjust or unreasonable discrimination in charges, practices, classifications, facilities or services for or in connection with like communication service, directly or indirectly, by any means or device, or to make any undue or unreasonable preference or advantage to any particular person . . . or to subject any particular person to any undue or unreasonable prejudice or disadvantage."

LSSi argues that as a local exchange carrier under 47 U.S.C. § 251(b)(3), a publisher of directories under 47 U.S.C. § 222(e), a provider of directory assistance data for local exchange carriers

and their directory assistance service providers, and a provider of call completion services, it is entitled to receive the directory assistance information directly from Comcast on a complete, accurate, timely, and nondiscriminatory basis. LSSi argues that using Targus as an agent/contractor to furnish data to LSSi is a per se violation of the nondiscriminatory access requirement under 47 U.S.C. § 251(b)(3). In response, Comcast contends that it will continue to provide the data through Targus, its agent, which will then provide nondiscriminatory access to LSSi. Comcast also contends that LSSi's claims in this case are a request for the court to create new rights under law that neither the FCC nor any other court has recognized.

Having carefully reviewed the record, the court finds that the plaintiff has a substantial likelihood of success on the merits. Comcast bears "the burden of demonstrating with specificity (i) that it is providing nondiscriminatory access and (ii) that any disparity in access is not caused by factors within its control." 47 C.F.R. § 51.217(e)(1). The court finds that given the record evidence, there is a substantial likelihood that the plaintiff can prove that Comcast's provision of telephone numbers and listing information through Targus, a competitor of LSSi, is discriminatory access and is prohibited under 47 U.S.C. §§ 251(b)(3) and 222(e). Also, Comcast's use of Targus as its agent constitutes an "undue or

unreasonable preference or advantage" under 47 U.S.C. § 202. As such, this factor weighs in favor of the plaintiff.

### B. Irreparable Injury

The second factor that the court must consider is whether irreparable injury will be suffered unless the injunction is issued.[1] BellSouth, 425 F.3d at 968. The plaintiff contends its business requires that LSSi receive complete, accurate, and timely access to Comcast's directory assistance listing data. The plaintiff has presented evidence that Targus is in the marketplace telling LSSi's customers that Comcast will only be providing its data to Targus and that the customers should use Targus instead of LSSi as a data vendor because LSSi will receive less than complete data. Thus, the plaintiff contends that irreparable damage to LSSi's reputation, customer relationships, and ability to compete is imminent. The defendant responds that the alleged harm is too

---

[1] The court notes that although the usual standard for a temporary restraining order or preliminary injunction requires a showing of irreparable harm, the plaintiff argues that an exception applies to alleged violations of statutes such as the one at issue here. For example, in Mical Communications, Inc. v. Sprint Telemedia, Inc., 1 F.3d 1031, 1035-36 (10th Cir. 1993), a case involving the Communications Act, the court concluded that irreparable harm need not be shown when the defendant is engaged in acts prohibited by a statute which provides for injunctive relief to prevent such violations. However, since the plaintiff cites no Eleventh Circuit authority in support of this position, the court will address the irreparable injury factor.

speculative to allow for injunctive relief and that Targus will supply LSSi with nondiscriminatory, timely, and accurate data.

Having carefully reviewed the record, the court finds that the plaintiff has demonstrated that irreparable injury will result without an injunction. The plaintiff has no adequate remedy at law for the loss of competitive position, market share, reputation, and customer relationships that would result absent injunctive relief. See, e.g., Ferrero v. Associated Materials, Inc., 923 F.3d 1441, 1449 (11th Cir. 1991) (finding irreparable harm where competition prohibited by non-compete agreement would result in loss of investment in goodwill and customers). As such, this factor weighs in favor of the plaintiff.

### C. Balance of Injuries

The third factor that the court must consider is whether "the threatened injury to the moving party outweighs whatever damage the proposed injunction might cause the non-moving party." BellSouth, 425 F.3d at 968. The plaintiff contends that if the court grants interlocutory relief, Comcast will suffer little to no harm because an injunction would ensure continuation of the status quo. Comcast contends that an injunction may interfere with its contractual relationship with Targus. The court agrees with the plaintiff that the threatened injury to LSSi is much greater than any injury an

injunction would cause Comcast. As such, this factor weighs in favor of the plaintiff.

**D. Public Interest**

The fourth factor that the court must consider is whether the injunction would be adverse to the public interest. BellSouth, 425 F.3d at 968. The plaintiff contends that the public interest expressed by Congress and the FCC requires direct and nondiscriminatory access to directory assistance listing data. The defendant contends that LSSi conflates the public interest with its own commercial interests. The court finds that requiring Comcast to act in conformity with the statute is in the public interest, and so this factor weighs in favor of the plaintiff.

**E. Conclusion**

As discussed above, the court finds that the four BellSouth factors weigh in favor of the plaintiff. As such, the plaintiff's motion for a temporary restraining order [Doc. No. 2], construed as a motion for a preliminary injunction, is GRANTED.

**III. Security**

Since the court has granted the plaintiff's motion for a preliminary injunction, the court must consider the appropriate amount of security to require under Federal Rule of Civil Procedure 65(c), which requires security "in an amount that the court considers proper to pay the costs and damages sustained by any

party found to have been wrongfully enjoined or restrained." While the plaintiff has asked the court to waive the bond requirement, the court finds that some security is necessary. The court finds that a security or cash bond in the amount of $100,000 is appropriate in this case.

**IV.  Conclusion**

For the above reasons, the plaintiff's motion for a temporary restraining order [Doc. No. 2], construed as a motion for a preliminary injunction, is GRANTED. The defendant is ENJOINED from failing to provide directory assistance listing data directly to LSSi on a complete, accurate, timely, and nondiscriminatory basis. This injunction will go into effect at the time that the plaintiff posts a $100,000 security or cash bond with the clerk.

SO ORDERED, this  4th  day of May, 2011.

/s/Charles A. Pannell, Jr.
CHARLES A. PANNELL JR.
United States District Judge